## CIRCUIT COURT OF BALTIMORE CITY.

Filed January 29, 1914.

OLIVIA C. HOPEWELL
VS.
MARY E. REA AND JOHN A. BOYD.

*Richard S. Culbreth* and *Geo. C. Thomas* for plaintiff.

*Francis I. Mooney, Wm. G. Towers* for defendants.

DAWKINS, J.—

Bill filed in this case for specific performance of contract dated April 15, 1913, for purchase of 112 E. Madison street, Baltimore, Md., for $5,000, the payment of $100 of which purchase money was acknowledged to have been made prior to the signing of the contract and the balance to be paid ninety days from the date of the contract or *sooner at the purchaser's option*, with the further agreement that the vendor should have *forty-five days after date of transfer* to vacate the property with no charge to be made to the vendor for the use of the property from the date of the settlement until she vacated.

There is a further agreement, that the forty-five days allowed the vendor to vacate the property should not begin to run before June 1, 1913, *in any event*.

This contract was executed in duplicate, but on one of the copies there was written an endorsement which authorized and directed the vendor "to convey the property here referred to, to John A. Boyd, I, however, being relieved from no liability under the terms of the within agreement." This endorsement was dated July —, 1913, without a witness, but signed by Mary E. Rea. The testimony establishes the fact that this instruction was signed on July 28, 1913.

The right to relief in these cases is not absolute like the right to recover a judgment. The matter of granting relief in Specific Performance cases is to a great extent discretionary with the Court, but in exercising that discretion, the Court should not be capricious, but should take into consideration all the circumstances surrounding the transaction as well as the conduct of the parties, together with the facts established by the written contract.

It is a well-established rule, too, that the true meaning of the contract must control. Taking the facts as stated and applying them in the light of this principle let us see how they fit.

The Plaintiff was engaged in keeping a boarding-house. She gave up her business and then went so far as to notify her guests that they had to vacate. She had never by any action manifested herself unwilling to carry out strictly the arrangement to convey the property. All of her actions are entirely consistent with her intention to sell and her desire to have the sale consummated. In commenting on the contract it might be proper in the first place to take notice of the interlineations. I must believe that the interlineations were made as testified to by Mr. McAllister. It would be hard to reconcile the action of the parties with the belief that the interlineations were not made at the time the contract was brought back to Miss Hopewell by her counsel.

Apart from the discrepancy as to the testimony regarding the time when the interlineations might have been made, in the view I take of this case, the interlineations were certainly accepted as a part of this contract in June, when Mr. Boyd had possession of it, and in July, when Mrs. Rea signed the endorsement. If she did not know it, then it was her duty to know it. Mr. Boyd did testify that Mrs. Rea knew of the interlineations about June 1, 1913.

If he did not know it, there certainly could be no explanation that can satisfactorily explain why he did not know it. Some doubt might have occurred as to the exact position occupied by these Defendants in regard to this contract, but it does not seem to be reasonable to regard Mr. Boyd as an undisclosed principal, who could throw the burden on himself and relieve Mrs. Rea. If Mrs. Rea by her action has made herself a principal she would have to bear the burden of lending her name whether she received a profit or not from the transaction for the purpose of dealing with the property, with the Plaintiff.

It certainly would not occur to me that the endorsement on the back of the contract in any way establishes the fact that Mr. Boyd was the real purchaser. Certainly there is no privity of contract between him and Miss Hopewell. Miss Hopewell never in writing accepted him as the purchaser. At to how far her subsequent dealings might have suggested the acceptance by her of him as the purchaser will be referred to later.

Mr. Boyd and Mrs. Rea put themselves in the position they have, entirely without any apparent acquiescence on the part of Miss Hopewell. Miss Hopewell had sold her house to Mrs. Rea. Miss H. did not care who took title to the property, so I can not see anything in the endorsement except a mere direction as to whom should take the title.

This contract has no language in it that would suggest that time was ever considered the essence of it. There apparently was no thought of any very definite time being understood for the conveyance of the property. In fact, the early negotiations seem to be somewhat with the view of obtaining an option and the very language of the contract would indicate that time was not to be regarded as an element of moment, for the reason that after naming forty-five days after transfer, the vendor reserved the right to have the forty-five days not to begin to run be-

fore June 1, 1913, in any event, so that it seems to me, if we take the time when all parties admitted the house was ready for delivery in August or September, that there would be no reason on the part of the Defendants to fail to comply with the terms of the contract. No objection apparently could be validly made to the short delay and no injury was shown to have resulted from it. In fact, Mr. Thompson's letter notified Mr. Boyd in writing that the property was ready for delivery in August. Mr. Warner's two letters would indicate that it was ready for delivery before September, when they were written. The deed itself was executed on July 28, 1913, and prepared by Mr. Boyd and Mr. Boyd was not then ready to accept the property, so that whatever delay may have occurred was certainly not of any importance to the parties at the time, and if it were it was not occasioned by the Plaintiff. Besides, there is no evidence of any real injury to the Defendants. If Mr. Boyd was not the one who had to suffer he was only a monthly tenant where he was living. This brings us to what I deem the only debatable defenses offered in the case.

1. Was Mr. Boyd the real purchaser and the undisclosed principal, and if so, did he disclose his participation in the contract in such a way and at such a time as to relieve Mrs. Rea and entitle him to sue or be sued? I do not understand any principle of law that would justify a party making a contract and then to be relieved from its operation, because someone saw fit to say that the transaction was made for their benefit and that at any stage of the proceedings, that he could say that he would disclose that he was the principal and acted with the other party and that the one who had entered into the contract should thus be relieved from all liability.

In this particular case, if the instructions written on the back of the contract could be construed as substituting Mr. Boyd for Mrs. Rea, and if Miss Hopewell either by her action or by anything she may have assented to in writing could have been shown to have accepted Mr. Boyd in lieu of Mrs. Rea as the purchaser, that doubt is completely removed by the clause over Mrs. Rea's own signature, in which she was relieved from no liability under the terms of the agreement. Whilst every opportunity was given the Defendants to establish, if they could, any new contract, I think the proof absolutely fails in that regard. Neither was there a new contract proven, nor was a material variation of the contract on which the suit in this case was brought. I am fully aware of the ruling of the Court of Appeals in 101 Maryland (Sommervell vs. Coppage), because I happened to participate in the trial of that case myself, but there is a different situation here. There was no suggestion that it was brought to the mind of Miss Hopewell, or that it was ever discussed between the parties that this property was to become Mr. Boyd's and that he had to have it on September 1, 1913, or that his failure to get it on September 1, 1913, made any material difference.

2. As a corollary of what has just been discussed, the other question that might have seemed debatable is the lack of mutuality, either regarding Mr. Boyd as the purchaser or regarding Mrs. Rea as the purchaser.

As I have already stated, I believe the endorsement means nothing more than a mere instruction on the part of Mrs. Rea as to whom to convey the property. Miss Hopewell in my opinion could not enforce the contract against Mr. Boyd, Mr. Boyd could not enforce it against her. Mrs. Rea could cancel the instructions. If I am right in this, Mrs. Rea could enforce the contract against Miss Hopewell and Miss Hopewell could enforce it against Mrs. Rea, so that it would seem to me for the reasons I have stated that this contract is enforceable and should be enforced and I am prepared to sign a decree for Specific Performance.